HARPER & KIRSCHTEN SHOE Co. *v.* THE S. & B. SHOE Co. ET AL.

*Court of appeals—Jurisdiction on appeal—Section 6, Article IV, Constitution—Appealability determined, how—Proceedings under Bulk Sales Law—Section 11102 et seq., General Code —Sufficiency of notice to vendor's creditors—Failure by creditor to protect claim—Right to have purchaser declared trustee.*

1. The question of the appealability of a case to the court of appeals under Section 6, Article IV of the Constitution, does not depend upon whether or not the right and remedy are created by statute, but upon whether the basic principle of the statute is equitable in character and based upon some equitable doctrine.

2. The Bulk Sales Law (Section 11102 *et seq.,* General Code) is an outgrowth of an equitable doctrine, and an action brought thereunder on an account, in which plaintiff prays for an accounting, that a receiver be appointed, and that one of the defendants be declared a trustee, is appealable

to the court of appeals under Section 6, Article IV of the Constitution.

3. The purchaser of a stock of merchandise complies with the bulk sales law when he notifies the vendor's creditors of the proposed sale more than five days before he takes possession of the goods and pays the purchase price, as required by Section 11102, General Code.

4. A creditor so notified, who merely objects to such anticipated sale by letter in which he demands the payment of his claim in full, without doing anything to protect himself before possession is taken or money paid, cannot later take advantage of the provisions of Section 11103-1, General Code, even though a large majority of the creditors did take proper steps to protect their claims.

(Decided May 5, 1922.)

APPEAL: Court of Appeals for Lorain county.

*Messrs. Spear, Godfrey & Spear* and *Mr. F. M. Stevens,* for plaintiff.
*Mr. Geo. H. Chamberlain,* for defendants.

FUNK, J. This action was commenced by plaintiff under the "Bulk Sales Law," Sections 11102, 11103 and 11103-1, General Code, in the court of common pleas of Lorain county, against The S. & B. Shoe Company, on an open account for $331.31, and interest from an average due date, for which amount plaintiff asked judgment against the shoe company and against the defendant A. M. Brenner as the purchaser in bulk of the stock and fixtures of The S. & B. Shoe Company, asking to have him "declared to be a trustee of said stock of merchandise and fixtures, or the proceeds of any part thereof, that may have been sold, for the benefit of plaintiff and any other creditors of the said The S. & B. Shoe Company who intervene herein; that a receiver be

appointed to take charge of said stock of merchandise and fixtures and the proceeds of any part thereof that may have been sold and to convert said stock and fixtures remaining unsold, into cash under the order of this court, and hold the proceeds thereof that may have been sold and to convert said stock and fixtures remaining unsold, into cash under the order of this court, and hold the proceeds thereof for payment of any judgment that may be rendered herein for plaintiff or for any other creditors of The S. & B. Shoe Company, who may intervene herein, or for the payment of any judgment of any other creditors of The S. & B. Shoe Company, rendered in this court or properly proved in this court, that the said defendant A. M. Brenner be ordered and required to account to the receiver for the proceeds of any of said stock and fixtures he has sold, that an accounting be ordered for the determination of the amount thereof, and for such other and further relief as is proper.''

The record shows that judgment was entered by default against The S. & B. Shoe Company on April 25, 1921, for $331.31, and interest, as prayed for; that no receiver was ever appointed; and that on October 7, 1921, a jury was waived and the cause submitted to the court upon an agreed statement of facts. The court below found A. M. Brenner to be a trustee for the benefit of plaintiff, to the amount of his judgment and costs, of such stock and fixtures and the proceeds of any part thereof that may have been sold by him, and ordered that Brenner pay out of such proceeds the judgment and costs rendered against the shoe company.

From this finding the defendant Brenner appealed to this court, and a transcript of the proceed-

ings, together with the agreed statement of facts, are now before this court.

The plaintiff has filed a motion to dismiss this appeal for want of jurisdiction, and has submitted its brief, in which it urges that this court has no jurisdiction under Section 6, Article IV of the Constitution, for the reason that the right created by the bulk sales law did not exist at common law and that the right and the remedy are both purely statutory and not equitable in their nature. The only case cited by it is *Wagner* v. *Armstrong*, 93 Ohio St., 443. It is further argued in the brief that ''A question analogous to this appears in *Hollowell* v. *Schraden*, 28 Cir. Dec., 597, in which it is held that an action to foreclose a mechanics lien is not cognizable in equity for the reason that a mechanic's lien upon real property is wholly a creature of the statute.''

We take up first the ''analogous'' argument that ''a mechanics lien is not cognizable in equity'' because ''a creature of statute.''

We have carefully examined the decisions in Ohio along this line and find that the great weight of authority is to the effect that the question of the appealability of a case does not depend on whether or not the right and remedy are created by statute, but upon the broader principle as to whether or not the basic principle of the statute is equitable in character and based upon some equitable doctrine. We are convinced that this is the law in Ohio.

We call attention to the fact that the decision in the case of *Hollowell* v. *Schraden, supra,* cited by the plaintiff, was by a divided court. From an examination of the authorities we are of the opinion that the dissenting opinion of the court of appeals

judge in the *Hollowell* v. *Schraden case* is the sounder argument. We are supported in this position by the supreme court of Ohio, as in 96 Ohio St., at page 599, it reversed the majority opinion of the court of appeals on authority of *Wagner* v. *Armstrong,* 93 Ohio St., 443. See also *Eggar* v. *Corwin,* 30 C. D., 467, page 475, and authorities there cited, which bear out this conclusion. There is thus no doubt that it is the law in Ohio that a mechanic's lien is equitable in character and actions under it appealable.

Applying this rule to the bulk sales law, and reasoning not only by analogy from the law concerning mechanics' liens, mortgages and partition, but also from an examination of the reason for the bulk sales law, we have come to the conclusion that the bulk sales law is an outgrowth of an equitable doctrine to protect an unpaid seller of merchandise from a fraudulent transfer of such stock of merchandise.

For many years it has been the recognized law of Ohio that an unpaid seller of merchandise had a lien upon the goods sold if the sale was tainted with fraud or the goods purchased without reasonable hope or expectation of being able to pay, or with the intent of not paying. The doctrine of stoppage *in transitu* by the seller of merchandise is also a long well-recognized principle. These remedies are all more or less equitable in character. The bulk sales laws of the various states are analogous in principle to both common law and precedent, and are in a large measure declaratory of the common and precedent law of sales of personal property, and provide the privilege of applying for an order declaring that the purchaser shall become in certain

events a trustee for and accountable to the creditors for merchandise purchased in bulk.

The primary idea of a trustee and an accounting to creditors is in its very nature of an equitable character, and is founded in equity. It will be noticed that in the instant case the prayer of the petition is that the purchaser be declared a trustee, that a receiver be appointed, and for an accounting for the merchandise and fixtures, or the proceeds of such merchandise as may have been sold by the purchaser Brenner.

It is certainly conceded that actions for a receiver and for an accounting, and for declaring one a trustee for the benefit of someone else, are all equitable in their nature, and are generally, if not always, found in a court of chancery. The only authorities we need cite for this, aside from the reason for the rule itself, as above suggested, are the following two cases: *Romeo & Co.* v. *Nasif*, 26 C. C. (N. S.), 542, and *United Sales Promotion Co.* v. *Anderson*, 100 Ohio St., 58. In the latter case it appears in the statement of the case that it was "on appeal" from the common pleas court to the court of appeals. However, we might add that we see no reason why the case of *Wagner* v. *Armstrong*, *supra*, is not applicable by analogy as well to the bulk sales law as to the mechanic's lien law, as applied by the supreme court in the case of *Hollowell* v. *Schraden*, *supra*, and no reason why we could not properly base our holding in this case on that case without the aid of the above two cited cases. The motion to dismiss the appeal is therefore overruled.

We come now to a consideration of the main issue. Did the purchaser Brenner comply with the bulk sales law in the purchase of this stock of mer-

chandise and fixtures? Before applying the facts
in this case, let us examine what is the purpose of
this law, and what are the rights and remedies and
the things necessary to be done by the purchaser
or the creditor to avail themselves of this law.

The clear purpose of the law is to protect the un-
paid seller of merchandise and goods from a sale
by a merchant of his stock and fixtures, otherwise
than in the ordinary course of trade. The pur-
chaser of such goods, in bulk, in order to protect
himself, must receive from the seller under oath a
full and complete written list of all his creditors,
with their names and addresses and the amount due
or owing each, and he must notify them at least five
days before he takes possession of such merchan-
dise and fixtures or pays for same, all in strict com-
pliance with Section 11102, General Code. If the
purchaser does these things strictly within the pur-
view of this act, he is absolved from all further lia-
bility, at least as to all creditors so notified. It is
conceded that the law must be strictly construed
and strictly followed, and, should the purchaser not
strictly comply with the law, then he is liable, any
time within ninety days from such sale, to have him-
self declared a trustee for the benefit of any unno-
tified and unpaid creditor of the seller. See *Mollen,
Thompson & James Co.* v. *Klein,* 19 N. P. (N. S.),
415, and *United Sales Promotion Co.* v. *Anderson,
supra.*

It is readily seen that it is the purpose of the
law to give the creditor an opportunity to be on
hand and examine into the conditions of the sale, as
to whether or not the price paid is fair and just, or
will be sufficient to pay the seller's creditors in full,
and to ascertain the responsibility of the seller,

whether he will be able to pay his debts regardless of the purchase price he is receiving for such merchandise, and then and there, either by some amicable arrangement or by some legal action, to take such steps as he may deem necessary to protect his claim. It is not sufficient for such creditor, after he has received notice of such anticipated sale, to remain in his office in some distant city and merely object to such sale by a letter to the purchaser and demand the payment of his claims in full. The purchaser, having notified the creditor more than five days before he takes possession or pays the money, has done all he is bound to do, and such creditor cannot simply object to such sale by letter and then take advantage of Section 11103-1, General Code, and bring an action, within ninety days after such sale, to have the purchaser declared a trustee for his benefit.

The agreed statement of facts in this case shows that on or before June 20, 1918, the purchaser Brenner did notify this plaintiff by mail, under the provisions of Section 11102, that he had purchased the stock and fixtures of The S. & B. Shoe Company of Elyria, for $5,700. The plaintiff on June 28 acknowledged the receipt of this letter, in a letter to the purchaser Brenner, which letter Brenner denies he ever received, in which letter plaintiff objected to the sale unless plaintiff was paid the amount of its claim in full, $331.31. It further appears from the record that the leading creditors, if not all the creditors, of The S. & B. Shoe Company, except this plaintiff, did come to look after their interests in reference to this sale; that in the meantime the purchaser Brenner discovered that he had been deceived as to the amount and value of the stock of

merchandise and was about to refuse to complete the sale and to bring action to recover the $500 cash payment made thereon. Whereupon, the creditors organized and appointed a committee, and upon the advice of this creditors' committee the original agreement was altered and the sale completed by the following endorsement upon the original agreement, to-wit:

"ELYRIA, OHIO, *July 5, 1918.*
"The check for $5,200 as given by second party in payment of balance due, having been stopped and payment refused on the alleged grounds of fraud, for the purpose of avoiding litigation and settling the matter out of court on the advice and with the consent of the Creditors' Committee, I hereby accept the further payment of $4,500 cash in full settlement of said contract.

                    "GEO. H. CHAMBERLAIN, *Atty.*
                    *"for S. & B. Shoe Company."*

It further appears from the record that by arrangement of the creditors' committee, the purchase price for this stock and fixtures was paid to one Geo. H. Chamberlain, as trustee for the creditors of The S. & B. Shoe Company, and that he, as such trustee, after paying the expenses connected with such sale and such arrangement between the purchaser, the seller and the creditors' committee, distributed the proceeds of the sale *pro rata* among all the creditors of the seller, and that each creditor was apportioned 45% of his claim, and that said trustee for creditors tendered to this plaintiff his check for the sum of $142.72, being its *pro rata* share from the proceeds of the sale, which check

the plaintiff refused to accept and returned to trustee, and brought this action in an endeavor to collect the amount of its claim in full from such purchaser by having him declared a trustee for the benefit of plaintiff and such other creditors as would join in the action. All other creditors having accepted the trustee's check for their *pro rata* share from the proceeds of the sale, no other creditor joined in this action.

It was claimed in oral argument that there were two transactions; that the sale of which the plaintiff had notice from the purchaser was never completed, and the one that was completed was an entirely different and separate sale, of which the plaintiff had no notice.

We cannot agree with the plaintiff in this position, and in view of all the facts and circumstances pertaining to this sale as set forth in the record we find that the sale as finally completed was in reality the original sale of which the plaintiff was given notice as required by law; that the diminution in price was made because of the fact that the purchaser found upon investigation that the property which was represented by the officers of the seller company to be in the inventory, and upon which the original price was based, was not all there; that the abatement in price was made in proportion to the amount of goods not there; that it was conceded not only by the seller but also by the creditors' committee and the trustee for the creditors that the abatement in price was right and justifiable because all the goods were not there as represented by the officers of the seller company.

We are of the opinion that the purchaser did all that he was required to do; that had it not been for

the other creditors being on hand and taking charge of such sale and authorizing a settlement of the dispute by endorsement on the original contract, there would probably have been no sale; that the whole thing was but one continuous transaction and not two separate sales; that the whole transaction was open and aboveboard; that the creditors' committee completed the sale and took charge of the funds; that more than five days had elapsed between the time plaintiff received notice of such sale and the actual taking possession of the merchandise and fixtures and the paying of the purchase price; and that the creditors' committee no doubt avoided much delay, costs and expense, and all creditors received a much larger percentage on their claims than they otherwise would have received.

We do not believe it is the purpose of this law to permit one creditor, who had notice and stayed away and merely objected by letter, without doing anything to protect himself before possession was taken or money paid, to afterward take advantage of Section 11103-1, General Code; because a large majority of the creditors did come and take charge of the goods and complete the original contract, even in a modified form, on terms conceded to be for the benefit of all.

Under the circumstances of this sale, it is possibly doubtful whether or not the bulk sales law applied at all after the creditors had received notice; and the great majority in number and amount, if not all but one creditor, came and took charge of the store and actually completed the original sale in a modified form, for the benefit of all concerned. However, as plaintiff was tendered its proportionate share of the proceeds of the sale, and no advan-

398 OHIO APPELLATE REPORTS.

Natl. Fire. Ins. Co. *v.* Sayers.          [16 Ohio.

tage was taken of anyone or by anyone connected with the transaction, clearly equity has been done, and the bulk sales law was complied with, not only in spirit but in letter.

We therefore find that the purchaser, A. M. Brenner, should not be declared a trustee and held accountable to the plaintiff for any sum whatever, and it is the order of this court that the petition of plaintiff be dismissed as to the defendant A. M. Brenner.

*Judgment accordingly.*


WASHBURN, P. J., and PARDEE, J., concur in judgment.